

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAPID TEST PRODUCTS, INC., )
)
       Plaintiff, )
)
vs. ) No. 03 C 2431
)
DURHAM SCHOOL SERVICES, a/k/a )
ROBINSON BUS SERVICES, INC., )
)
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rapid Test Products, Inc., submitted this motion to reconsider the court's grant of summary judgment for defendant, Durham School Services, in which the court held that defendant did not discriminate in the formation of a contract in violation of 42 U.S.C. § 1981 (see Mem. Op. and Order, June 17, 2008 ("Order")). Plaintiff argues two bases for altering the judgment pursuant to Fed.R.Civ.P. 59(e): (1) it has newly discovered evidence in the form of the affidavit of a former Durham employee suggesting that the company's decision not to use plaintiff was motivated by racial animus; and (2) the court did not give plaintiff the benefit of drawing all reasonable inferences in its favor. For the following reasons, plaintiff's motion is denied.

### Background

Since the facts are laid out in detail in the Order, we will assume familiarity with it and provide an abbreviated version. Plaintiff is an Illinois corporation whose sole shareholder and employee, Cynthia Cooper, is African-American. Plaintiff is certified as a Woman Business Enterprise ("WBE") and as a Minority Business Enterprise ("MBE") by the City of Chicago

in the areas of "data base administration for drug testing; billing and marketing services," and by Cook County as a "supplier of Rapid Test Products for the detection of drugs" (def.mem.exhs.A and B). Defendant is a provider of student transportation services to metropolitan school districts in the United States and Canada. It is not minority-owned. In January 1999 it acquired Robinson Bus Services, Inc., a minority-owned Illinois corporation.

Defendant was awarded a three-year contract to provide student transportation services to the Chicago Public Schools ("CPS") in May 2002. Defendant's requisite affirmative action plan included plaintiff as a subcontractor. Plaintiff was included in the bid after Cooper contacted Arthur Rudy Thompson, an African-American who, at the time, served as Durham's Chicago regional manager. With Thompson's input, Cooper described her services on CPS' form (called a letter of intent) as "drug testing of drivers, attendants, mechanics, billing services," even though she was not certified as a WBE or MBE provider of drug testing services (def.exh.K). Cooper later averred that she "did not like the verbiage used," but deferred to Thompson because she assumed he understood "how things were to be listed with CPS" (Cooper stmt., 12/06/07, p.4).

After learning that defendant had consolidated all of its drug testing into a national account with Quest Diagnostics, Thompson wrote to Quest on August 19, 2002, to inform it that plaintiff was included at 2% in the Durham affirmative action plan (attachment, plf.'s reply on mot. to reconsider). In an effort to identify other services plaintiff might provide, Thompson told Cooper to submit an invoice to defendant for $5,000 as an advance on future fingerprinting work, which defendant subsequently paid. Although Cooper had been informally trained to take fingerprints, plaintiff was not certified as a M/WBE provider of fingerprinting services.

After plaintiff performed fingerprinting work in the fall of 2002, Cooper submitted an invoice for $685.30 and received payment. She submitted another invoice for $979.00 in January 2003, for additional fingerprinting work, which was not paid. In the interim, Thompson left his position.

Cooper complained to CPS on two occasions that her company was not being utilized for the services she was certified to provide. After CPS began investigating the situation, Durham submitted a revised plan for M/WBE participation to CPS in March 2003, which substituted another minority-owned company, MedRx, for plaintiff. CPS approved the revision. Plaintiff sued when defendant demanded the return of its $5,000 payment, less the $979, from the unpaid invoice for fingerprinting services.

## Discussion

Motions to amend or alter the judgment (also called motions to reconsider), pursuant to Rule 59(e), serve a limited function and should only be granted where, for example, the court has patently misunderstood a party; the court has made an error of apprehension, not reasoning; or significant new facts have been discovered. Fed.R.Civ.P. 59(e); County of McHenry v. Ins. Co. of the West, 438 F.3d 813, 819 (7th Cir. 2006). Rule 59 enables district courts to correct their own errors, sparing "the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Division of General Motors Corp,. 51 F.3d 746, 749 (7th Cir. 1995). In practice, "because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied." 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995). A motion

to reconsider must be filed within ten days after the entry of judgment.[1] Fed.R.Civ.P. 59(e). A party may not use a motion to reconsider to rehash old arguments or to introduce new evidence that could have been presented earlier. <u>Oto v. Metropolitan Life Ins. Co.</u>, 224 F.3d 601, 606 (7th Cir. 2000). When the new evidence comes from a newly-discovered witness, the party must show why the witness could not have been discovered previously, had due diligence been exercised. *Id.*

### Plaintiff's Newly-Discovered Evidence

Plaintiff states that it did not became aware of Malcolm Hardiman, a former general manager at Robinson, and then Durham, until after the parties completed briefing on summary judgment. Hardiman learned of the case a few weeks before he provided his affidavit on June 21, 2008, when he met Cooper at a social function and "happened into a discussion in which she learned I had worked at Durham" (Hardiman aff. ¶ 2). Plaintiff argues that since defendant did not list Hardiman in its discovery responses, Hardiman's affidavit should be considered newly-discovered evidence. Defendant admits that it did not identify Hardiman in its discovery responses, but claims it had no reason to do so since Hardiman did not have knowledge relevant to plaintiff's allegations.

This situation is similar to that in <u>Oto</u>, which was an appeal from the district court's finding that the deceased plaintiff, Oto, had not signed a form changing the beneficiary of his daughter's life insurance policy, but rather, that his signature had been forged. 224 F.3d at

---

[1] Defendant argues that the motion was not filed within 10 days of the entry of judgment, and therefore may not be considered pursuant to Fed.R.Civ.P. 6(a). However, as plaintiff points out, when the time for filing is less than 11 days, intermediate Saturdays, Sundays, and holidays are not counted, and neither is the day the judgment is entered. Fed.R.Civ.P. 6(a)(1)-(2). Excluding the requisite days, plaintiff's motion was filed on the tenth day after the entry of judgment. Although the order in question was signed on June 13, 2008, we start the 10-day clock on the day the judgment was entered on the docket, which was June 17, 2008. Fed.R.Civ.P. 58(c)(2); <u>Aguirre v. Turner Construction Co.</u>, 2008 WL 4790395, *1 (N.D. Ill. Oct. 27, 2008). Plaintiff's motion was therefore timely filed.

603. After the district court ruled in Oto's favor, the defendant produced an affidavit from a former Oto employee who stated that he was familiar with the plaintiff's signature and that it was in fact his signature on the insurance form. *Id.* at 606. As here, the defendant in Oto claimed he discovered the employee by "sheer coincidence," and that it had been impossible to learn the identities of Oto's employees since Oto had passed away during discovery. The Seventh Circuit did not buy the argument, noting that the defendant could have asked Oto about his employees during his deposition, or subpoenaed Oto's business records. Therefore, the defendant did not show that he had exercised due diligence during discovery. *Id.*

Here, even though defendant did not disclose Hardiman's name, it may honestly have believed that he had no knowledge relevant to the case (and, as discussed below, this assessment appears to be correct). Plaintiff could have asked defendant, during discovery, for a list of all its managers in Chicago during the relevant time periods. We are not convinced that plaintiff could not reasonably have been expected to discover Hardiman had it exercised due diligence. However, we need not decide whether to disallow the affidavit on that basis – Hardiman's affidavit is inadmissible since it does not meet the evidentiary requirements of Fed.R.Civ.P. 56(e).[2]

Evidence submitted pursuant to Rule 56(e) must be competent evidence of a type admissible in content, even if it is not admissible in form. *Juarez v. Menard, Inc.*, 366 F.3d 479, 484 n. 4 (7th Cir. 2004). A lay witness' testimony, including affidavits supporting or opposing summary judgment, is not admissible where it exceeds the scope of the witness' personal knowledge. *Visser v. Packer Eng'g. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).

---

[2] Rule 56(e) requires that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matter stated."

Although "personal knowledge" encompasses inferences and therefore opinions, those inferences must be substantiated by specific facts. Drake v. Minn. Mining & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998). "They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." Visser, 924 F.2d at 659.

In addition, Rule 56 requires that affidavits cite specific concrete facts, not just a "bald assertion of the general truth of a particular matter." Drake, 134 F.3d at 887. Statements based solely on an affiant's own beliefs are inadmissible speculation. Fulmore v. Home Depot, U.S.A., Inc., 423 F. Supp. 2d 861, 869 n. 2 (S.D. Ind. 2006); see also U.S. ex rel Robinson v. Northrop Grumman Corp., 2002 WL 31109387, *5 (N.D. Ill. Sept. 20, 2002).

Hardiman's affidavit does not meet the requirements of Rule 56(e). One serious problem is that the affidavit indicates that Hardiman is personally familiar with Durham's practices in general, only to the extent of reaching general conclusions from observations about retention and continuation of vendor relationships. There is no who, what, when or where. Further the affidavit fails to show any personal knowledge of the purported agreement with plaintiff specifically.[3] Hardiman states that he was a general manager at Robinson, and then Durham, from December 1999 to December 2002 (aff. ¶ 1). But he provides no information about his responsibilities, supervisors, access to personnel records, what role he had (if any) in negotiating and signing contracts, or even where in the Chicago area he worked. His only statement about his job duties is that he traveled around the country to meetings, which other Durham managers attended (id. at ¶ 6). As such, it is not evident that his statements about defendant's practices (see paragraphs 6, 9, 13, 14, 15, 16, and 18) are within his personal

---

[3] There is no suggestion that Hardiman is an expert witness, and thus he is not permitted to offer opinion testimony outside the scope of his personal knowledge. See Fed.R.Civ.P. 702.

knowledge. A court cannot infer that personal knowledge exists where the affiant has not laid a foundation. *See* Drake, 134 F.3d at 887 (affidavit of former employee was inadmissible where it failed to recount factual instances based on the affiant's personal knowledge that would support inferences about employer's behavior).

In addition, statements based on Hardiman's personal beliefs, in paragraphs 5, 6, 8 and 19 are not facts that would be admissible as evidence, but merely inadmissible speculation. *See* Fulmore, 423 F. Supp. 2d at 869 n. 2. For instance, Hardiman avers that "[f]rom these meetings and my work as a manager for Durham in the Chicago area, it became clear to me over time that the company's cultural philosophy was, as one of my colleagues in the company once said, 'Everything's white'" (aff. ¶ 6). Not only is it unclear what this sentence means, but it contains hearsay not falling within any exception to the hearsay rule. Fed.R.Evid. 803. Hardiman further opines that, "Indeed, it has occurred to me that Mr. Durham's attitude toward African Americans, as expressed by him on a day-to-day basis in my experience, is strong evidence for why there is or should be such a thing as affirmative action" (aff. ¶ 8). But nothing suggests Hardiman interacted with Mr. Durham on a day-to-day basis, and his beliefs about affirmative action are wholly irrelevant to this case.

Finally, Hardiman's sweeping conclusory statements in paragraphs 8, 9, 10, 11, 12, 13, 16, and 17 do not rise above speculation and therefore are inadmissible. For example, Hardiman stated that "Durham himself routinely belittled or talked down to African-American people. He took a much different, more respectful tone with the people working for him who were white" (aff. ¶ 8). This statement is nothing more than a "bald assertion of the general truth of a particular matter" which is "exactly the type of conclusory allegation[] Rule 56 counsels should be disregarded on summary judgment." Drake, 134 F.3d at 887 (statement

that "[e]very time I, or any other African-American employee went to [management] with a problem involving another employee, who was white, [management] would never conduct an investigation or take any action against that white employee" was properly struck). Hardiman also avers that "[t]he white people brought in by Durham to assume managerial positions in the Chicago area did not have the same level of experience or professional discipline as the people they replaced and often did not have comparable levels of education" (aff. ¶ 11). This sweeping statement is unaccompanied by any specific facts to suggest that Hardiman was personally knowledgeable about Durham's hiring practices. *See* Adusumilli v. City of Chicago, 164 F.3d 353, 359 (7th Cir. 1998) (statement that "as time passed, it became apparent to me that the harassment was based upon gender and national origin" was properly struck as lacking foundation and being outside the scope of the affiant's personal knowledge).

Because the affidavit is rife with conclusory statements, Hardiman's own beliefs, and conjecture not clearly based on personal knowledge, it is inadmissible.[4] *Id.* (holding that on summary judgment a court cannot consider parts of an affidavit that are insufficient under Rule 56(e)). Whether plaintiff could reasonably have been expected to discover Hardiman earlier or not, the inadmissibility of his affidavit means that it cannot be the basis for plaintiff's motion to reconsider.

### The Court's Analysis of Plaintiff's Discrimination Claim

Plaintiff also urges this court to reconsider its Order based on our analysis of the facts

---

[4] The few portions of Hardiman's affidavit that do not run afoul of Rule 56(e)'s requirements are either irrelevant to the issues decided on summary judgment or add nothing new to the record.

of the case and our application of § 1981.[5] Plaintiff claims that the court misconstrued the facts in its analysis of plaintiff's prima facie case of discrimination, and that it deprived plaintiff of the benefit of all reasonable inferences to which it was entitled with respect to its pretext arguments.[6]

This court found that plaintiff failed to demonstrate the presence of the second and fourth elements of the prima facie case, as required in the indirect burden-shifting method of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) (Order p.14). As for the second element, the court found that no reasonable jury could find that plaintiff met defendant's legitimate expectations, regardless of whether those expectations were based on the work plaintiff was initially asked to do (drug testing), or the work it actually performed (fingerprinting). Plaintiff does not dispute the court's finding that it did not meet defendant's reasonable expectations in the area of drug testing. Regarding the fingerprinting work plaintiff performed, plaintiff claims that "[t]he Court's analysis of Rapid Test's work in fingerprinting (Mem. Op., pp. 11-12) likewise appears to misconstrue the facts not only from Rapid Test's prior pleadings but within the paragraph itself (What Rapid Test offers 'to rebut these statements['], as the Court concludes at the end of the paragraph appears to be referenced at the beginning of the same paragraph)" (plf. mot. to reconsider, p.14). Not only is the sentence difficult to understand, but plaintiff has pointed to no specific areas where the court allegedly misconstrued facts regarding the fingerprinting work plaintiff did for

---

[5] As with the background section, since the applicable legal standards were described in detail in the Order, we will not repeat them here.

[6] Our understanding of plaintiff's motion is that it is objecting to our analysis of the indirect burden-shifting method of proving discrimination. To the extent that plaintiff may have intended to present the Hardiman affidavit as direct evidence of discrimination, that argument is moot since the affidavit is inadmissible.

defendant. It is not the court's job to scour the record for facts to defeat a motion for summary judgment; that is the obligation of the non-moving party. <u>Harney v. Speedway SuperAmerica, LLC</u>, 526 F.3d 1099, 1104 (7th Cir. 2008).

Moreover, in its underlying motion plaintiff claimed that defendant's complaints about Cooper's fingerprinting work were pretext. But arguing pretext is not appropriate at the prima facie case stage, as it does not address the hard evidence that Defendant was not satisfied with Plaintiff's fingerprinting work. Absent an indication of the specific facts in dispute, our finding that Plaintiff has not satisfied the second element of the prima facie case holds (*see* Order pp.12-13).

For the same reasons, the court found that plaintiff and MedRx were not similarly situated – the fourth element of the prima facie case.[7] Defendant did not have any issues with MedRx's work, while it did with plaintiff's fingerprinting work. The court also found that plaintiff and MedRx were not similarly situated because defendant had no billing discrepancy with MedRx and was not engaged in litigation with MedRx. Plaintiff is correct that this litigation began after defendant terminated plaintiff's participation in the contract. But plaintiff does not adequately address the billing discrepancy issue; its motion is silent on the court's point that Cooper was not entitled to the $685.30 she received for fingerprinting services, on top of the $5,000 advance. Our finding that MedRx and plaintiff are not similarly situated therefore holds.

As we pointed out in the Order, plaintiff's failure to make out a prima facie case

---

[7] Plaintiff mischaracterizes this court's opinion by stating that, "As the court acknowledged, Rapid Test and MedRx were in fact similarly situated" (plf. mot. to reconsider, p. 13). The court found that plaintiff and MedRx were similarly situated only in that MedRx was doing work for defendant that plaintiff was qualified, certified, and ready to do (*i.e.* acting as a third party administrator between defendant and Quest).

renders summary judgment in favor of defendant proper. Paul v. Theda Med. Ctr., Inc., 465 F.3d 790, 795 (7th Cir. 2006). Since the Order addressed the issue of whether defendant's proffered reasons for not using plaintiff were pretext, however, we address plaintiff's dispute with those findings here. We found defendant's reason for not using plaintiff was legitimate: plaintiff was not certified to do what defendant claimed it could do in its letter of intent, and it had no need for the services plaintiff was actually certified to provide. Plaintiff argues that had the court construed all reasonable inferences in plaintiff's favor, we would have found a question of fact as to whether defendant's reason was pretext.

Plaintiff's argument centers on the August 19, 2002 letter Thompson sent to Quest after he found out that defendant had consolidated all of its drug-testing into a national account with Quest. Thompson wrote that "all student transportation contracts in Chicago require 50% minority participation." He then stated that plaintiff is included in defendant's plan at 2%, and is a certified WBE in "Database Administration for Drug Testing; Billing & Marketing Services, and Supplier of Test Products for Detection of Drugs." The letter concludes with a request that Quest contact Thompson and Cooper to "establish a dialogue on business services as it relates to the MBE plan." Plaintiff contends that the letter shows that defendant knew all along that plaintiff was not certified to do drug-testing. Rather, plaintiff argues, defendant simply included plaintiff in the bid to satisfy M/WBE requirements, and there is therefore a question of fact as to whether defendant's reason for not using plaintiff was a pretext for discrimination.

A pretext is a "deliberate falsehood." Forrester v. Rauland-Borg Corp., 453 F.3d 416, 419 (7th Cir. 2006). That is, if the stated reason for the adverse action is not what induces the employer to take the action, it is a pretext. Id. at 418. To show pretext, a plaintiff must

identify "such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [the defendant] did not act for the asserted non-discriminatory reasons." Fane v. Locke Reynolds, LLP, 480 F.3d 534, 541 (7th Cir. 2007) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). Summary judgment is only proper "where no rational fact finder could believe that the employer lied about its proffered reasons for the hiring decision in question." EEOC v. Target Corp., 460 F.3d 946, 960 (7th Cir. 2006) (quotation omitted).

The Seventh Circuit has addressed the issue of pretext in several recent cases. In Humphries v. CBOCS West, Inc., the plaintiff, an African American, was fired from his position for allegedly leaving the safe unlocked in the restaurant in which he worked. 474 F.3d 387, 390 (7th Cir. 2007), aff'd, CBOCS West, Inc. v. Humphries, 128 S.Ct. 1951 (2008). Humphries had previously complained that he was treated in a discriminatory way and that the firing of another African-American employee was discriminatory. The Seventh Circuit found the record "replete" with contested material facts pertaining to Humphries' work performance that suggested that his employer's stated reason for firing him may have been pretext for retaliation: the only eyewitness to the incident with the safe was from the individual whom Humphries had targeted in his complaint of discrimination; no investigation was made into the eyewitness' claim; two of Humphries' co-workers treated him less deferentially just prior to his firing; another co-worker specifically warned him that the two co-workers who were treating him less favorably were "up to something to harm Humphries"; the firing came one day before Humphries planned to meet with his supervisor and presumably would have created a more elaborate documentary record of his discrimination complaint; and similar transgressions were not sufficient to fire other similarly-situated employees who did not

complain of discrimination. *Id.* at 407. The court concluded that Humphries had presented sufficient evidence to support a reasonable inference that the reason given for his firing was a fabrication. Summary judgment for the defendant was therefore inappropriate. *Id.*

In <u>Hasan v. Foley & Lardner LLP</u>, a Muslim of Indian descent alleged that he was terminated from his employment with Foley after the terrorist attacks of September 11, 2001, because of his religion, race, national origin, and color. — F.3d —, 2008 WL 5205818 (7th Cir. Dec. 15, 2008). Foley had initially claimed it fired Hasan for poor performance. *Id.* at *8. After finding Hasan's mostly positive work evaluations, however, Foley changed its explanation, claiming it fired Hasan because it only had enough work to keep its best associates occupied. The Seventh Circuit found that genuine issues of material fact existed as to whether these reasons were pretextual in light of Hasan's positive evaluations and the fact that Foley hired additional associates immediately after firing Hasan. *Id.* at *8-*9. As such, summary judgment was not appropriate.

In this case the letter from Thompson accurately states the scope of plaintiff's certification, but does no more than request that Quest engage in a "dialogue" about plaintiff's services. According to plaintiff, the letter says "specifically that [Thompson] expected that Rapid Test and Quest would be working together" (plf. mot. to reconsider p.8). In fact the letter says nothing that explicit. Viewed in the light most favorable to plaintiff, the letter could possibly raise a question as to *when* defendant became aware that plaintiff was not certified to do drug-testing. But this is not enough to give rise to a reasonable inference that defendant's reason for not using plaintiff was a pretext for discrimination. At the summary judgment stage, the court is not required "to draw every conceivable inference from the record, . . . only reasonable ones." <u>Moser v. Ind. Dept. of Corrections</u>, 406 F.3d 895, 905 (7th

Cir. 2005) (citation omitted). Unlike Hasan, defendant has been consistent in its stated reasons for not using plaintiff. And, more importantly, unlike Humphries and Hasan, the record here is devoid of any meaningful evidence that could give rise to a reasonable inference of race or gender discrimination. As we stated previously, the record indicates that the only entity believing that Rapid Test was brought in to do administrative work was Rapid Test itself.[8] Plaintiff has not shown that defendant's reason for not using plaintiff is "unworthy of credence." We therefore reaffirm our finding that plaintiff has not shown that defendant's reason was a pretext for discrimination. Defendant cannot be faulted for not using services plaintiff was not certified to perform. And for the reasons previously discussed, we cannot determine that defendant discriminated in failing to find a niche where plaintiff could validly perform.

Finally, we note that even if the letter could somehow be construed as creating an inference of discrimination, defendant offered another legitimate reason for terminating plaintiff's participation in the contract – the dispute about the $685.30 plaintiff billed and received for fingerprinting, rather than deducting it from the $5,000 advance it had already received. Plaintiff has failed to offer anything in its motion to suggest that this was not a legitimate reason for defendant to have terminated plaintiff's participation in the contract. Defendant's other stated reason for not using plaintiff, therefore, is also legitimate.

---

[8] *See* Order, p.13, n.7 for a detailed account of what the record indicates regarding the parties' understandings of what Plaintiff would do for Defendant. Plaintiff's argument is belied by the fact that Cooper failed to clarify the scope of her company's certification when she had the opportunity to do so: She listed her services on the CPS letter of intent as "drug testing of drivers, attendants, mechanics, billing services," even though she was not comfortable with the wording (Cooper 12/06/07 stmt. p.4).

## Conclusion

For the foregoing reasons, plaintiff's motion to reconsider the grant of summary judgment in favor of defendant is denied.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 10, 2009.

FEB 10 2009